IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ASHUNTE SMITH, et al., | ) |
|     Plaintiffs, | ) CASE NO. 2:20-cv-2471 |
| | ) |
| | ) Judge Edmund A. Sargus, Jr. |
| | ) Magistrate Judge Jolson |
| v. | ) |
| MIKE DEWINE, et al., | ) |
|     Defendants. | ) |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs respectfully move this Honorable Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction prohibiting the defendants, and their subordinates, from depriving Plaintiffs from their Constitutionally protected rights.

Plaintiffs pray that this Honorable Court (1) prohibit Defendants from denying the Plaintiffs right to the attorney-client privilege in a manner that is safe and confidential; (2) prohibit Defendants from withholding disinfectant from Plaintiffs; (3) prohibit Defendants from withholding medication and medical screening from Plaintiffs; (4) prohibit Defendants from violating safe distancing guidelines; (5) prohibit Defendants from denying Plaintiffs access to personal protective equipment; (6) prohibit Defendants from leaving sick prisoners in close proximity to Plaintiffs; and (7) prohibit Defendants from refusing to inspect, monitor, or care for the health of Plaintiffs.

**Memorandum of Points and Legal Authorities to Support the Necessity of the Preliminary Injunction in This Case**

A. *Legal Standard applicable to cases involving Constitutional Claims*

1

Plaintiffs can satisfy each and every element necessary for this Honorable Court to grant preliminary injunctive relief. In order to obtain a temporary restraining order or a preliminary injunction in a federal district court the moving party, or in this case parties, must establish that (1) the likelihood of irreparable harm to the plaintiffs if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Nightclubs, Inc. v. City of Paducah,* 202 F3d 884 (6th Cir. 2000).

In matters that involve the allegation of Constitutional violations, the four-part test laid out above normally applies to injunctive relief and is boiled down to one real factor – the likelihood of success on the merits becomes the determinative factor. *Connection Distrib. Co. v. Reno, 154 F3d 281* (6th Cir. 1998). More importantly, especially in cases such as this, even the temporary loss of a Constitutional right establishes irreparable injury. *Elrod v. Burns,* 427 U.S. 347 (1976).

B. *Plaintiffs case has a substantial likelihood of SUCCESS on the merits.*

    a. <u>Factual basis for the substantial likelihood of success has increased as COVID-19 and the associated problems have spread throughout the Ohio Prison System like wildfire.</u>

Plaintiffs filed the underlying action on May 15, 2020, when a total of thirty thousand six hundred and fifty-seven (30,657) Ohioans had tested positive for COVID-19.[1] The number of Ohioans infected by COVID-19 has increased by twelve thousand four hundred and sixty-five (12,465) individuals to an estimated total of forty-three thousand one hundred and twenty-two (43,122) Ohioans, or an increase of forty-one percent (41%) in just over thirty days.[2]

---

[1] Ohio Department of Health – COVID-19 Dashboard, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/overview

[2] Ohio Department of Health – COVID-19 Dashboard, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/dashboards/overview

Plaintiffs incorporate their Complaint as if fully stated herein but look to emphasize that in the time since the filing of their Complaint, their situation and those similarly situated individuals has not improved – rather the Constitutional violations have only worsened. At the time Plaintiffs initiated this action, the Department of Rehabilitation and Corrections had tested a total of seven thousand eight hundred and seven prisoners (7,807).[3] In the time since the filing of the underlying Complaint, the Department of Rehabilitations and Corrections have only tested a total of twelve-thousand four hundred and ninety-nine prisoners (12,499).[4] The deliberate indifference to the health and safety of Plaintiffs, as well as both the correctional staff and local populations, is staggering.

Individuals sentenced to low level felony offenses, with relatively short (eight months) prison terms have died from COVID-19 within the first fifty days that they arrived into Defendants' custody. The threat in these cases is not illusory, but rather is literal life and death. In the face of this threat Defendants have elected to take virtually no meaningful action to prevent the spread of the disease, protect individuals in their custody, or to give prisoners a means to challenge their conditions.

      b. <u>The failure to implement widespread testing throughout the Ohio prison system demonstrates that Defendants are deliberately indifferent to the serious risk posed by COVID-19.</u>

Denial of adequate medical care and diagnostic testing when prisoners are faced with obvious life-threatening conditions establishes such a strong inference that the denial of the same medical care can establish a Constitutional violation on its own. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer,* the Supreme Court of the United States

---

[3] ODRC - COVID-19 Inmate Testing – Updated 5/15/2020.

[4] ODRC - COVID-19 Inmate Testing – Updated 6/18/2020.

held that liability attaches when officials know of and disregard an excessive risk to prisoner health or safety. *Id*. at 833-836. Prison officials needed to be both aware of the facts from which the inference of a substantial risk of harm could be drawn, and they needed to have actually drawn that inference. *Id.* at 833-836.

A cause of action for failure to provide adequate medical treatment requires a showing that the defendants "acted with a deliberate indifference to the serious medical needs" of the prisoners. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-686 (6th Cir. 2001). There are two parts to the claim that need to be established, an objective component and a subjective component. *Id.* at 686. To establish the objective component, the prisoner must demonstrate the "existence of a 'sufficiently serious' medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890 (6th Cir. 2004). To establish the subjective component, the prisoner must demonstrate that the defendants possessed "a sufficiently culpable state of mind in denying medical care." *Id.*

Plaintiffs establish the objective component of this analysis by pointing to Defendants' own words, comments, and press briefings on this matter. Governor DeWine has described the gravity of the threat that individuals face as being similar to being in a war and declared a state of emergency.[5] Director Annette Chambers-Smith has openly stated that once this disease enters a prison that there is "no stopping it."[6] The threat from COVID-19 is so pervasive that the Ohio National Guard has been deployed to at least two prisons.[7]

---

[5] Governor Mike DeWine – 4-30-2020 – COVID-19 Update: https://ohiochannel.org/video/governor-mike-dewine-3-9-2020-covid-19-update

[6] Governor Mike DeWine – 4-30-2020 – COVID-19 Update: https://ohiochannel.org/video/governor-mike-dewine-4-30-2020-covid-19-update

[7] 10TV WBNS – State: Ohio National Guard members to help in 2nd prison: https://www.10tv.com/article/state-ohio-national-guard-members-help-2nd-prison-2020-apr

Numerous prisoners report that distancing measures that were initially enacted have been removed, cross population movement has been reestablished, and sleeping units (bunks) in the dormitory housing units have been pushed back to incredibly close quarters. Prisoners have reported that correctional staff refuse to hear any of their complaints or grievances, not just in a timely fashion, but at all.

The subjective component of the test might be so heavily outweighed by the clear and present danger that the threat of COVID-19 posses but for the fact that the Defendants' own words demonstrate that they are critically aware of how dangerous this disease is. Director Annette Chambers-Smith has a history of working with infectious diseases in prison and has acknowledged the specific danger that COVID-19 poses upon the prison population.[8] Defendants, as averred in paragraphs 45 through 53 of the Complaint, have specific knowledge that there exist thousands of prisoners in their custody that are at extremely high risk of complications from COVID-19 infections.[9]

Plaintiffs realize that not every prisoner can be released, but those that fit the categories established in the Complaint should be. CDC guidelines should be followed. Defendants violation of the 8th Amendment needs to be immediately remedied by strict compliance with CDC guidelines and policies. For prisoners that are not released each needs to have access to appropriate sanitation, personal protective equipment, medical care, and medical screening. Prisoners who are ill need to be moved into medical care and isolation. The lack of testing performed by Defendants

---

[8] Governor Mike DeWine – 4-30-2020 – COVID-19 Update: https://ohiochannel.org/video/governor-mike-dewine-4-30-2020-covid-19-update

[9] Ohio Department of Rehabilitation and Correction 2019 Annual Report, available at https://drc.ohio.gov/Portals/0/Annual%20report%20final%20ODRC.pdf.

demonstrates their deliberate indifference to the prison population, those who work with that population, and those that live near that population.

      c. <u>Plaintiffs have been denied any meaningful contact with their Attorneys in violation of the Sixth Amendment as legal mail is routinely opened, private phone calls denied, and private contact visitation has been denied.</u>

Defendants indefinitely suspended all prisoner visitation on March 20, 2020. This suspension of visitation includes attorney-client visitation. At least one prison, Richland Correctional Institution, continues to open mail that is clearly labeled as attorney-client communication. Defendants have not provided any means of communication between attorneys and their clients that will maintain the attorney-client confidentiality.

Prisoners have the fundamental right to access the courts and their attorneys. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). A prisoner's access to the courts must be adequate, effective and meaningful. *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir. 1984). To establish an effective claim of the denial of access to counsel or the courts a plaintiff must establish that the defendants' actions "hindered the prisoner's efforts to pursue a non-frivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).

In determining what constitutes a "non-frivolous" claim, courts have made it clear that they are not merely "litigation engines" but that the Constitution zealously guards a prisoner's right to "attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey,* 518 U.S. 343, 355.

Here, members of the Plaintiff group have time sensitive and time limited actions that can be taken on their behalf but are impossible to conduct without the ability for Plaintiffs to meet with their attorneys in a confidential setting. Prisoners in similarly situated positions have direct appeals pending, possible appeals to the Ohio Supreme Court, and other post-conviction remedies

available under State or Federal law that are impossible to complete when there is a bar on the central aspect of the attorney-client relationship – communication.

Plaintiffs inability to have any meaningful relationship and communication with their attorneys destroys their access to the courts and renders them virtually unable to raise challenges to the conditions of their confinement; specifically, COVID-19 and the deprivation of adequate medical care and screening.

*C. Plaintiffs' Complaint and this Petition are the appropriate avenue to remedy the Constitutional violations raised above.*

This Honorable Court is empowered by 28 U.S.C. 2241(C)(3) to release prisoners who have been, or are being, held in violation of the Constitution. *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). It is well accepted that a habeas corpus attack is an attack by a person in custody challenging the legality of that custody. *Id.* A successful habeas petition can require officials to place prisoners in less restrictive conditions immediately. *Ziglar v. Abbasi*, 137 S.Ct 1843, 1862.

Plaintiffs are not raising an attack, here, on the validity of their individual convictions, rather on the manner in which their sentences are being executed or the form of their continued detention as applied to their specific set of circumstances.

*D. Plaintiffs have standing to bring their Complaint and this request for a Preliminary Injunction.*

Plaintiffs are each currently prisoners within the prison system maintained in the State of Ohio under the direct control of Defendants. Plaintiffs are each serving a term of confinement within the State of Ohio and are each exposed to the risks of COVID-19 and have been deprived their right to the effective assistance of counsel.

E. *The ongoing harm to Plaintiffs outweighs any possible harm to Defendants, and injunctive relief is in the best interests of the Public.*

Public interest is always on the side of the correct application of Constitutional protections. *Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009). Here, in the present case, Plaintiffs face an invisible enemy that is spreading through the prison system in a way that cannot be controlled with the prison population at its current numbers. Defendants have taken no meaningful action to remedy the threat to the health, safety, and lives of Plaintiffs that Defendants have openly commented that they are aware of.

Plaintiffs, also, have already suffered a near total deprivation of their Sixth Amendment rights to the court and counsel when Defendants enacted a total shutdown on visitation between prisoners and their attorneys without affording a private, confidential, and safe manner for prisoners and their attorneys to communicate.

Defendants cannot advance any harm that they would actually suffer by allowing prisoners and their attorneys to communicate in a confidential manner. Prisoners can be afforded masks, personal protective gear, and meeting rooms that are not in use for the general public (as there is no ongoing visitation) that are large enough for social distancing and can be cleaned after meetings. Private phone lines can be established that are not capable of being recorded at no harm to the Defendants.

F. *Plaintiffs should not be required to post bond*

Plaintiffs should not be required by this Court to post bond. Federal Rule of Civil Procedure 65 allows the trial court wide discretion in determining whether or not a bond should be posted. *Continental Oil Co. v. Frontier Refining Co.,* 338 F2d 780 (10th Cir. 1964). Here, there is no cognizable harm that will occur if Defendants are ordered to cease from violating Plaintiffs' constitutional rights.

G. *Requested Relief*

Plaintiffs pray that this Honorable Court, pursuant to Federal Rule of Civil Procedure 65, 42 U.S.C. 1983, and 28 U.S.C. 2243, issue an order that:

(1) Orders Defendants to fully restore access between Plaintiffs and their attorneys in a way that safely maintains the attorney-client privilege;

(2) Orders Defendants to provide disinfectant to Plaintiffs;

(3) Orders Defendants to provide Plaintiffs with medical screening and testing for COVID-19;

(4) Orders Defendants to reduce the prison population in a manner consistent with the Complaint to an amount that satisfies safe distancing guidelines;

(5) Order Defendants to provide Plaintiffs with personal protective equipment;

(6) Order Defendants to immediately transfer prisoners with COVID-19 symptoms to the appropriate isolated medical treatment; and

(7) Order Defendants to inspect, monitor, or care for the health of Plaintiffs.

Respectfully submitted,

By: **/s/ Joseph C. Patituce**
Joseph C. Patituce (0081384)
Megan M. Patituce (0081064)
Kimberly Kendall Corral (0089866)
Patituce & Associates, LLC.
16855 Foltz Industrial Parkway
Strongsville, Ohio 44149
(440) 471-7784 (office)
(440) 398-0536 (fax)
attorney@patitucelaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing Motion has been forwarded to all parties via the clerk's office electronic filing on the 19th day of June, 2020 and via electronic mail to:

Zachary M. Holscher, Esq.
Michael Walton, Esq.
Michael.walton@ohioattorneygeneral.gov
Zachary.holscher@ohioattorneygeneral.gov
Attorneys for Governor DeWine


Thomas E. Madden, Esq.
Thomas.madden@ohioattorneygeneral.gov
Attorney for Director Chambers-Smith

                                                     **/s/ Joseph C. Patituce**
                                                     Joseph C. Patituce (#0081384)
                                                     Attorney for Defendant