**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ASHUNTE SMITH, et al.,** | : | |
| | : | **Case No. 2:20-cv-2471** |
| **Plaintiffs,** | : | |
| | : | **Judge Edmund A. Sargus, Jr.** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **MIKE DEWINE, et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANT ODRC DIRECTOR ANNETTE CHAMBERS-SMITH'S
MOTION TO DISMISS**

---

Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6), Defendant Ohio Department of Rehabilitation and Correction Director Annette Chambers-Smith ("the Director") respectfully moves this Court to dismiss Plaintiffs Ashunte Smith, Kaiquin Wang, Christopher Martin, and Travis Williams's ("Plaintiffs") Complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  A supporting memorandum follows.

Respectfully Submitted,

DAVE YOST
Ohio Attorney General

/s/ *Thomas E. Madden*
_____
Charles Schneider (0005821)
Thomas E. Madden (0077069)
Byron Turner (0096388)
Tracy Bradford  (0058556)
Assistant Attorneys General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-728-7055
thomas.madden@OhioAttorneyGeneral.gov
*Counsel for Defendant Director Chambers-Smith*

# TABLE OF CONTENTS

**Page(s)**

**TABLE OF CONTENTS** ................................................................................................ ii

**TABLE OF AUTHORITIES** ........................................................................................ iii

**I. INTRODUCTION** ......................................................................................................1

**II. LAW AND ARGUMENT** .........................................................................................2

    A.  Standard of Review.................................................................................................2

        1.  Fed.R.Civ.P. 12(b)(6)...................................................................................2

        2.  42 U.S.C. § 1983.........................................................................................3

    B.  Plaintiffs' Complaint make only conclusory assertions and fails to meet the Pleading standards of *Twombly* and *Iqbal* ..................................................................4

    C.  The provisions of the Prison Litigation Reform Act of 1995 (PLRA) mandate that this lawsuit be dismissed because the Plaintiffs admit that they have not exhausted ODRC's grievance process ...........................................................................5

    D.  Plaintiffs have not alleged sufficient facts to assert a violation of the Eighth Amendment..................................................................................................................7

    E.  Plaintiffs' allegations of a violation of Ohio's constitution are barred by the Eleventh Amendment ...............................................................................................12

    F.  Plaintiffs' Sixth Amendment claim is without merit because they failed to State a plausible claim for relief ...........................................................................14

**III. CONCLUSION**.......................................................................................................15

**CERTIFICATE OF SERVICE** ....................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*State ex rel. AFSCME v. Taft*,
    156 Ohio App. 3d 37 (3rd Dist. 2004) ...................................................................................1

*Albright v. Oliver*,
    510 U.S. 266 (1994).......................................................................................................3

*Alden v. Maine*,
    527 U.S. 706 (1999).................................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................2, 3, 4

*Austin v. United States*,
    509 U.S. 602 (1993).....................................................................................................14

*Balderson v. Mohr*,
    2012 WL 1552776 (S.D. Ohio May 1, 2012) ..........................................................3

*Ball v. Ohio*,
    2020 U.S. Dist. LEXIS 71701 (S.D. Ohio April 23, 2020) ................................6, 7

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................2, 4, 15

*Blatchford v. Native Vill. Of Noatak*,
    501 U.S. 775 (1991).....................................................................................................13

*Brown v. Plata*,
    563 U.S. 493 (2011) (J. Scalia dissenting).............................................................11

*Bruederle v. Louisville Metro Govt.*,
    687 F.3d 771 (6th Cir. 2012) ......................................................................................8

*Earnst v. Rising*,
    427 F.3d 351 (6th Cir. 2005) (en banc) ..................................................................13

*Experimental Holdings, Inc. v. Farris*,
    503 F.3d 514 (6th Cir. 2007) ....................................................................................14

*Farmer v. Brennan*,
    511 U.S. 825 (1994).......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fed. Mar. Comm'n v. South Carolina State Ports Auth.*,
535 U.S. 743 (2002).................................................................................................13

*Franchise Tax Bd. of Cal. v. Hyatt*,
139 S.Ct. 1485 (2019)............................................................................................13

*Hafer v. Melo*,
502 U.S. 21 (1991)..................................................................................................4

*Harden-Bay v. Rutter*,
524 F.3d 789 (6th Cir. 2008) ...................................................................................2

*Henry v. DeSantis*,
2020 U.S. Dist. LEXIS 86396 (S.D. Fla., 2020).....................................................10

*Heyerman v. Cnty. of Calhoun*,
680 F.3d. 642 (6th Cir. 2012) ..................................................................................3

*Hill v. Lappin*,
630 F.3d 468 (6th Cir. 2010) ...................................................................................3

*Hill v. McDonough*,
547 U.S. 573 (2006)...............................................................................................10

*Jones v. Muskegon Cnty.*,
625 F.3d 935 (6th Cir. 2010) ...................................................................................8

*Lavado v. Keohane*,
992 F.2d 601 (6th Cir. 1993) .................................................................................15

*Maney v. Brown*,
2020 U.S. Dist. LEXIS 96661 (D. Ore. 2020)........................................................11

*Meachum v. Fano*,
427 U.S. 215 (1976)...............................................................................................10

*Montejo v. Louisiana*,
129 S.Ct. 2079 (2009)............................................................................................14

*Murray v. Giarratano*,
492 U.S. 1 (1989)...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*O'Conner v. Donaldson,*
  422 U.S. 563 (1975)........................................................................................................10

*O'Neal v. State,*
  2020-Ohio-506 (10th Dist. 2020) ....................................................................................1

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984)..........................................................................................................13

*Pennsylvania v. Finley,*
  481 U.S. 551 (1987).........................................................................................................15

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,*
  506 U.S. 139 (1993).........................................................................................................13

*Raygor v. Regents of the Univ. of Minn.,*
  534 U.S. 533 (2002).........................................................................................................13

*Reilly v. Vadlamudi,*
  680 F.3d 617 (6th Cir. 2012) ............................................................................................4

*Rhinehart v. Scutt,*
  894 F.3d 721 (6th Cir. 2018) .......................................................................................8, 9

*Ross v. Blake,*
  136 S.Ct. 1850 (2016).......................................................................................................5

*Rouster v. Cnty. of Saginaw,*
  749 F.3d 437 (6th Cir. 2014) ............................................................................................8

*Santiago v. Ringle,*
  734 F.3d 585 (6th Cir. 2013) ............................................................................................9

*Smith v. Terry,*
  491 Fed. Appx. 81 (11th Cir. 2012)..................................................................................6

*Street v. Corr. Corp. of Am.,*
  102 F.3d 810 (6th Cir. 1996) ............................................................................................3

*Swain v. Junior,*
  958 F.3d 1081 (11th Cir. 2020) ......................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Turner v. Safley*,
 482 U.S. 78 (1987)................................................................................................10

*Turner v. United States*,
 885 F.3d 949 (6th Cir.2018) ...............................................................................14

*United States v. Gouveia*,
 467 U.S. 180 (1984)............................................................................................14

*West v. Atkins*,
 487 U.S. 42 (1988)................................................................................................3

*Wilson v. Williams*,
 2020 U.S. App. LEXIS 18087 (6th Cir. 2020). .........................................5, 7, 8, 11

*Woodford v. Ngo*,
 548 U.S. 81 (2006)..............................................................................................10

*Wragg v. Ortiz*,
 2020 U.S. Dist. 2745247 (D. N.J. 2020).........................................................11, 12

**Statutes**

18 U.S.C. § 3626..........................................................................................................11

28 U.S.C. §§ 1915A(b)(1).............................................................................................3

42 U.S.C. § 1983.......................................................................................................3, 4

42 U.S.C. § 1997e(a)....................................................................................................5

R.C. § 2929.20............................................................................................................10

R.C. § 5120.05..............................................................................................................1

**Other Authorities**

Sixth Amendment ..........................................................................................4, 5, 14, 15

Eighth Amendment .............................................................................................. *passim*

Eleventh Amendment..........................................................................................12, 13, 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................2

Fed. R. Civ. P. 12(b)(6) ................................................................................................2

Fed. R. Civ. P. 8(a) .......................................................................................................2

**MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

The claims brought against Director Annette Chambers-Smith should be dismissed.  In this case, Plaintiffs allege that  Director Chambers-Smith has violated their constitutional rights under the Sixth  and Eighth Amendments to the U.S. Constitution for  actions she has taken, or not taken, in response to the novel coronavirus (COVID-19 or the "virus") within Ohio's prisons. Plaintiffs' Complaint, however, is ripe for dismissal because it fails to plead, with  any  specificity, that Director Chambers-Smith has violated a specific constitutional right held by them to  justify  relief from this Court.

In January 2019, Governor DeWine appointed Annette Chambers-Smith as Director of the Ohio Department of Rehabilitation and Correction (ODRC) Under Ohio law, the Director of ODRC has "broad executive powers.".  *O'Neal v. State*, 2020-Ohio-506, P28-29 (10th Dist. 2020), citing, R.C. § 5120; *see also*, *State ex rel. AFSCME v. Taft*, 156 Ohio App. 3d 37, P29 (3rd Dist. 2004).  As Director, she has authority "to maintain, operate, manage, and govern all state institutions for the custody, control, training, and rehabilitation of persons convicted of crime and sentenced to correctional institutions." R.C. § 5120.05.   But she does not have the power to release inmates en masse, as demanded by Plaintiffs.   As explained below, the Plaintiffs' Complaint against the Director should be dismissed for its failure to allege sufficient facts to state a plausible claim for relief.

## II.    LAW AND ARGUMENT

### A.    Standard of Review

#### 1.    Fed. R. Civ. P. 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules authorize dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court of the United States has interpreted Rule 8(a) to mean that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may be dismissed for failure to state a claim if it fails ""to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."" *Twombly* at 555, quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). While a complaint need not contain detailed factual [*3] allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679. In the context of civil rights actions, "conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Harden-Bay v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).

Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## 2. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

To establish liability under 42 U.S.C. § 1983, a plaintiff must plead that a defendant is personally responsible for the unconstitutional actions which injured him. *Balderson v. Mohr*, No. 2:12-CV-235, 2012 WL 1552776, at *1 (S.D. Ohio May 1, 2012); *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). The collective acts of multiple defendants cannot be ascribed to an individual defendant; the plaintiff must state a plausible constitutional violation against each defendant.

"[T]his Court [must] analyze[] separately the allegations concerning the conduct of each Defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)); *see also Ashcroft v. Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). To establish personal liability upon a government officer in a § 1983 action, a plaintiff must show that the official, "acting under color of state law, *caused* the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (emphasis added).

**B.  Plaintiffs' Complaint makes only conclusory assertions and fails to meet the pleading standards of *Twombly* and *Iqbal***

Plaintiffs allege that Director Chambers-Smith has been deliberately indifferent to their serious medical needs without pleading any factual basis to support this claim.  Plaintiffs simply state, "Here, the state actors are required to provide adequate protection, prevention, and healthcare to the medically vulnerable Plaintiffs, but have been deliberately indifferent to the serious risk COVID-19 poses." (Doc. 1, PageID #20, ¶69).  As to COVID-19, Plaintiffs fail to plead with any specificity that Director Chambers-Smith has denied, or is not providing, medical care to any of the four named Plaintiffs, or to other members of their proposed class.  (*Id*.).

Plaintiffs also claim that practices put in place by the Director to limit visitations by outside persons violates their Sixth Amendment right to the assistance of counsel for [their] defense.  (*Id*., PageID #21, ¶78). Yet Plaintiffs fail to plead that even one of them has specifically been denied access to their own lawyer, or that current practices have infringed on confidential communications between one or more Plaintiffs and their respective counsel. (*Id*., PageID #16, ¶56-57).  In fact, the Complaint fails to allege that Plaintiffs have suffered any direct harm whatsoever due

specifically to actions taken by the Director to limit the spread of the virus in Ohio's prisons, let alone do they sufficiently plead that a constitutional violation has occurred. (*Id*., *in passim*).

Rather their Complaint speaks in generalities about Ohio's overall prison system, the alleged inability to institute broad testing[1], the rate of infections, alleged overcrowding, an inability to practice social distancing in some prison settings, and their fear that the virus will infect a vast majority of Ohio's prisoners. (*Id*., *in passim*). Plaintiffs allege the state has failed to take meaningful action "prior to COVID-19's silent creep into the prisons", and that only by this Court's intervention will spread of the virus diminish. (*Id*., PageID #5, ¶16). The complaint is rife with conclusory statements, couched as factual allegations, to persuade this Court to release thousands of prisoners at their behest, under their proposed plan, and to intervene in the management of Ohio's prisons based on conjecturer (*Id*., PageID #7-17, ¶26-62, ¶65). For these reasons, and those stated below, Plaintiffs' Complaint should be dismissed for failure to state a claim.

**C.    The provisions of the Prison Litigation Reform Act of 1995 (PLRA) mandate that this lawsuit be dismissed because the Plaintiffs admit that they have not exhausted ODRC's grievance process.**

Plaintiffs admit that they have failed to exhaust administrative remedies. (Doc. 1; PageID# 23, ¶85(g).) Instead they ask this Court to "[w]aive all grievances during the Covid-19 pandemic."[2] (*Id*.) But when it enacted the PLRA, Congress made exhaustion mandatory. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016).

---

[1] A federal court noted that, "[t]he State of Ohio has tested its prisoners en masse for COVID-19." "The Ohio prisons virus response undercuts BOP's ability to argue that testing is either unavailable or is impossible. *Wilson v. Williams*, 2020 U.S. Dist. LEXUS 70674.

[2] Interestingly, "all grievances" means Plaintiffs are requesting that the grievance procedure be waived for an indefinite time for each and every member of its class, regardless of whether the grievance relates in any way to COVID-19. This would allow inmates all across Ohio to disregard the mandatory grievance procedure required by the PLRA, and go directly to court. This is the exact result that Congress eliminated by way of enacting the PLRA.

Full and fair exhaustion of administrative remedies must occur prior to the commencement of any litigation, and this court "lack[s] discretion to waive the exhaustion requirement." *Smith v. Terry*, 491 Fed. Appx. 81, 83 (11th Cir. 2012).

An inmate's failure to allege that he exhausted administrative remedies of which he was admittedly aware is grounds for dismissal of the Complaint. *See Ball v. Ohio*, 2:20-cv-1759, 2020 U.S. Dist. LEXIS 71701, at *8 (S.D. Ohio April 23, 2020) (Deavers, MJ), *adopted by* 2020 U.S. Dist. LEXIS 84281.  In *Ball v. Ohio*, an inmate sought injunctive and monetary damages alleging that he was in danger of COVID-19 citing his own health problems and the prison's alleged response policies in dealing with the disease.  *Id.* at *5-6.  In the complaint, the plaintiff *acknowledged* that the prison did indeed have a grievance procedure in place and that he "did not notify prison authorities" of his displeasure with their COVID-19 policies.  *Id.* at *6.  This Court, acting *sua sponte* and looking only at the plaintiff's complaint, then dismissed his claims for lack of exhaustion under the PLRA, relying solely on the fact that he had specifically acknowledged there was a grievance system and that he did not use it prior to filing this lawsuit.  *Id.* at *8-9.

While this exhaustion requirement is an affirmative defense, "[a] complaint is subject to dismissal for failure to state claim if the allegations, taken as true, . . . show that relief is barred by an affirmative defense." *Id.*, citing, *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017), quoting, *Jones v. Bock*, 549 U.S. 215 (2007).  Here too, Plaintiffs acknowledge that there is a grievance procedure in place, as they are seeking that Defendants "[w]aive all grievances during the COVID-19 pandemic (Doc. 1 at sub ¶ 85 h., PageID# 23.) They have not alleged, and cannot allege, to have followed and exhausted a grievance procedure that they are now asking to have waived.  As in *Ball v. Ohio*, their admission to their refusal follow the grievance procedure is dispositive, and

for this independent reason, the Complaint must be dismissed in its entirety.  *See* 2020 U.S. Dist. LEXIS 71701 at *8-9.

> ### D.    Plaintiffs have not alleged sufficient facts to assert a violation of the Eighth Amendment.

Without much explanation, Plaintiffs allege ODRC does not have "adequate medical care for all prisoners who may contract COVID-19." (*Id*. at ¶33; PageID# 10.)  According to Plaintiffs, ODRC lacks in-house health care facilities and medical staff for screening, lacks ventilators, lacks other medical equipment, and lacks means to transport high volume prisoners for off-site care. (*Id*.)  Plaintiffs allege, due to staffing levels, ODRC is unable to maintain safety standards. (*Id*. at ¶35.)  The Sixth Circuit recently admonished that "our precedents do not require that prison officials take every possible step to address a serious risk of harm." *Wilson*, 2020 U.S. App. LEXIS 18087, at *30.  Instead, "[t]he key inquiry is whether the BOP 'responded reasonably to th[is] risk.'" *Id*. at *22.

Plaintiffs' allegations are woefully conclusory and make no specific allegations of how specifically ODRC is failing to provide sufficient medical care, what necessary medical equipment is unavailable, and how ODRC is failing to abide by CDC guidelines.  Most notably, Plaintiffs fail to allege how they believe  Director Chambers-Smith possesses a criminally reckless state-of-mind regarding their allegations that she has failed to obtain and maintain  necessary medical equipment. At best, Plaintiffs allege, without any factual basis, that ODRC is ill-equipped and possibly negligent in their administration of the prison system.  However, these conclusory allegations fail to demonstrate how Director Chambers-Smith has the requisite, culpable mental state equivalent to criminal recklessness that is required to satisfy the subjective element of a claim of deliberate indifference. Assuming ODRC's "response has been inadequate, it has not disregarded a known

risk or failed to take any steps to address the risk…such that its response falls below the constitutional minimum[.]" *Wilson*, 2020 U.S. App. LEXIS 18087, at *29.

It is now well-settled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'… proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. "Because the provision of medical care for a prisoner is not explicitly part of the sentence imposed, that care's inadequacy constitutes a 'cruel and unusual punishment[]' only if the government actor, at a minimum, knew the care provided or withheld presented a serious risk to the inmate and consciously disregarded that risk." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). "

To make out a deliberate-indifference claim, a plaintiff must allege two distinct elements, "one objective and one subjective." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). Objectively, the plaintiff must allege the "existence of a 'sufficiently serious' medical need." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010), citing, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a failure to treat a particular condition would deny the inmate 'the minimal civilized measure of life's necessities,' it meets this 'objective' prong."[3] *Bruederle v. Louisville Metro Govt.*, 687 F.3d 771, 776 (6th Cir. 2012) (citation omitted). Subjectively, a plaintiff must allege "'facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster*, 749 F.3d at 446 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). However, the Supreme Court moored its expansive interpretation of the Eighth Amendment, when it clarified that "inadvertent failure to provide

---

[3] For purposes of this Motion to Dismiss, Director Chambers-Smith focuses her argument in this memorandum on Plaintiffs' failure to meet the subjective test, obviating the need to address whether Plaintiffs sufficiently plead the objective test to withstand a motion to dismiss.

adequate medical care," or of a "negligent… diagnosis," fails to establish the requisite culpable state of mind for an Eighth Amendment violation. *Estell, supra. at* 104.

To meet the constitutional threshold of deliberate indifference, an inmate must allege that the medical provider acted with "'obduracy and wantonness' rather than 'inadvertence or error in good faith[.]'" *Rhinehart*, 894 F.3d at 737, citing, *Seiter*, 501 U.S. at 299. In fact, the prisoners must allege the Defendants acted with a mental state "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); See also, *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994) ("subjective recklessness as used in the criminal law is a familiar and workable standard… (and) we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."). A government official does not violate the Eighth Amendment "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. In that regard, where a government official "provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 838. According to the Supreme Court, "prison officials who act reasonably cannot be found [to have violated] the Cruel and Unusual Punishments Clause." *Id*. at 845.

Plaintiffs do not allege that the Director has made a subjective decision to disregard the risks of COVID-19 and therefore have not stated a viable Eighth Amendment claim. Instead, the Complaint refers vaguely to the "actions and inactions" of the Defendants, which are set forth in 67 paragraphs and never tied specifically to the Eighth Amendment claim. (Complaint, ¶¶ 68, 71). By failing to specify the Director's actions, the Plaintiffs fail to state a claim against her. The only specified action is the allegation that the Defendants (the Governor and the Director) have refused to reduce the population through immediate release, (Complaint ¶ 72), but the Director does not

have the power to order the immediate release of any prisoner.  Of the various release mechanisms available to Ohio prisoners, all require the consent of a judge (R.C. 2929.20), the parole board, the governor, or the legislature.  The Director is unaware of any statutory or Ohio constitutional provision through which she could unilaterally release inmates.

A mass release of inmates in the midst of this pandemic, which the Plaintiffs seek here, is the sort of decision constitutionally and statutorily entrusted solely to the discretion of Ohio's elected officials and representatives. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  It is primarily the responsibility of the States, not the federal government (and certainly not its courts), to craft policies for addressing a pandemic in a time of crises. *Jacobson*, 197 U.S. at 28.  "Federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States" *Meachum v. Fano*, 427 U.S. 215, 229 (1976).  "[I]t is 'difficult to imagine an activity in which a State has a stronger interest…than the administration of its prisons.'" *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). "And so long as the people's elected leaders are working within the confines of the people's constitutional rights, courts are not here to second-guess or micromanage their already unenviable jobs guiding us through profoundly unprecedented challenges." *Henry v. DeSantis,* 2020 U.S. Dist. LEXIS 86396, *25 (S.D. Fla., 2020).  Moreover, "[b]oth the State and the victims of crime have an important interest in the [omit] enforcement of a [prison] sentence." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006).

Ohio has undeniable interest in the enforcement of the criminal laws, the management of its prisons, as well as its authority to oversee and manage a viral pandemic.  *O'Conner v. Donaldson*, 422 U.S. 563, 583 (1975) ("There can be little doubt…  a State may confine individuals solely to protect society from the dangers of significant *antisocial acts* or *communicable disease*.") (emphasis added.)  In fact, to promote this executive prerogative, Congress has chosen to place

extreme statutory restrictions—by way of 18 U.S.C. § 3626—meant to restrain federal courts from granting this "most radical injunction issued by a court[.]" *Brown v. Plata*, 563 U.S. 493, 550 (2011) (J. Scalia dissenting).

Even if one were to parse through the opening 67 paragraphs of the Complaint to decipher which policies and actions of the Director the Plaintiffs may take issue with, the Complaint would be subject to dismissal under Fed. R. 12(b)(6). For example, Plaintiffs criticize ODRC for conducting mass testing in three prisons and allege that broader testing should be completed. (Doc. 1, ¶¶43-44). Even if accepted as true, Plaintiffs have stated only a dispute about the scope of the response and have failed to adequately allege a claim of deliberate indifference. A testing policy, based on the current standard of care, does not state a plausible Eighth Amendment violation. *Maney v. Brown*, 2020 U.S. Dist. LEXIS 96661, *50 (D. Ore. 2020) (CDC Correctional guidelines). In fact, a policy of "only test[ing] those inmates who exhibit symptoms" and then deemed "eligible for testing by medical staff" did not rise to deliberate indifference. *Wragg*, 2020 U.S. Dist. WL 2745247, at *21; See also, *Wilson*, 2020 U.S. App. LEXIS 18087, at *24 ("An inmate's 'disagreement with the testing… does not rise to the level of an Eighth Amendment violation.")

Plaintiffs also recount some of the provisions of a COVID-19 response that have been set forth by various health organizations and agencies, including Plaintiffs maintaining six-feet of distance from others, frequent hand washing, use of hand sanitizer, making sanitizing equipment available, regular cleaning of high-touch areas, having separate hours of operation for medically vulnerable inmates, and separation of employees who show symptoms of acute respiratory illness. (*Id*. at ¶31(a)-(d).) Based on a summary of ODRC's alleged demographics (¶¶47-52), Plaintiffs conclude a "significant percentage" of Ohio's prison population are "especially vulnerable" to

COVID-19. (*Id*. at ¶53; PageID# 14-16.) According to Plaintiffs, ODRC is "over-populated" and "susceptible to community spread." (*Id*. at ¶54.) Plaintiffs surmise that ODRC's "sky-rocketing infection rate" shows that its policies and procedures are "not functional." (*Id*. at ¶55.)

Plaintiffs allege that inmates should be released to allow for social distancing, and that "meaningful sanitation and protective measures" must be provided to those who remain incarcerated. (Doc. 1, ¶ 14-16.) But, as previously stated, the Director cannot unilaterally release inmates. And the Plaintiffs do not allege that the Director has not taken any steps to address the COVID-19 pandemic. Allegations of a prison official's "'inability to achieve meaningful social distancing'" fails to allege a plausible "a reckless state of mind." *Swain*, 2020 U.S App. LEXIS 14301, *12-13 (Eighth Amendment does not require universal enforcement of "social-distancing policies.") In other words, "[t]hat physical distancing is not possible in a prison setting" does not state a plausible Eighth Amendment violation. *Wragg v. Ortiz*, 2020 U.S. Dist. WL 2745247, *22 (D.N.J. 2020). Plaintiffs fail to specifically mention which policies are failing, and which procedures they allege are not functional. Furthermore, "neither increasing infections nor the impossibility of achieving six-foot social distancing in a jail environment establishes that the defendants acted with 'subjective recklessness as used in the criminal law.'" *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) ("the inability to take a positive action likely does not constitute a state of mind more blameworthy than negligence.")

### E. Plaintiffs' allegations of a violation of Ohio's constitution are barred by the Eleventh Amendment.

Based on Eleventh Amendment Immunity, and Ohio's sovereign immunity, Plaintiffs' attempt to root a claim under Ohio's constitution is non-cognizable.

Sovereign immunity is implicit in the "structure of the original Constitution itself." *Alden v. Maine*, 527 U.S. 706, 728 (1999). Thus, "[s]tates entered the Union with their sovereign

- 12 -

immunity intact[.]" *Blatchford v. Native Vill. Of Noatak*, 501 U.S. 775, 779 (1991). The Eleventh Amendment was "rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Sovereign Immunity is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today[.]" *Id.* at 713. "The Convention did not disturb State's immunity from private suits, thus firmly enshrining this principal in our constitutional framework." *Fed. Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 752 (2002). "Consistent with this understanding of state sovereign immunity, [the Supreme] Court has held that the Constitution bars suits against nonconsenting States in a wide range of cases." *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S.Ct. 1485, 1496 (2019).

As it relates to Plaintiffs' state constitutional claim, "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-41 (2002). To be precise, Ohio's "constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Earnst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc).

It is beyond dispute that state law claims cannot be brought in federal court against a state official, regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State protected by the Eleventh Amendment.") Accordingly, "this principle applies as well to state-law claims brought in federal court under pendent jurisdiction." *Id.* A court "need not consider" whether the Plaintiff is seeking "monetary or

injunctive relief" because neither basis for relief is "an exception to state sovereign immunity in federal courts." *Ernst*, 427 F.3d 369. "The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). Hence, this Court lacks jurisdiction to hear Plaintiffs' cruel and unusual punishment argument under Ohio's constitution.

### F. Plaintiffs' Sixth Amendment claim is without merit because they failed to state a plausible claim for relief.

The Sixth Amendment states, "*In all criminal prosecutions*, the accused shall enjoy the right to … have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. (emphasis added.) It is well settled "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *See Montejo v. Louisiana,* 129 S.Ct. 2079, 2085 (2009); *Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'") The Sixth Amendment only attaches at or after the initiation of a criminal proceeding. Specifically, "copied word for word from the Supreme Court's rule—is that the Sixth Amendment right to counsel attaches only 'at or after the initiation of judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Turner v. United States*, 885 F.3d 949, 951 (6th Cir.2018) (citing *United States v. Moody*, 206 F.3d 609, 614-15 (6th Cir. 2000) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion)); *see also United States v. Gouveia*, 467 U.S. 180, 188 (1984).

Plaintiffs do not plead that they have criminal cases pending for which the Sixth Amendment right to counsel would attach. (See generally, Doc. 1, Comp., PageID# 21-22; ¶¶ 77-

83.) Plaintiffs' presence within the prison system does not, within itself, indicate that there is a criminal prosecution pending against them. Moreover, there are no allegations throughout the entirety of the Complaint that any of the named Plaintiffs or potential class members currently have criminal prosecutions or appeals existing at this time. *Id*.

Because the Sixth Amendment only attaches in matters involving criminal prosecutions, Courts have long interpreted that to also mean subsequent appeals of criminal proceedings. An inmate has no federal constitutional right to counsel when pursuing a collateral attack—through state post-conviction or federal habeas corpus—of his conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *See also Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989). Conversely, the Amendment does not provide the same right for civil matters. *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). Plaintiffs do not attempt to assert that there are pending criminal proceedings existing to which the Sixth Amendment may attach. (Doc. 1, PageID# 21-22; ¶¶ 77-83.) Accordingly, Plaintiffs' Complaints fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III.    CONCLUSION

For all of these reasons, ODRC Director Chambers-Smith respectfully requests the Court dismiss Plaintiffs' Complaint against her.

Respectfully Submitted,

DAVE YOST
Ohio Attorney General

/s/ *Thomas E. Madden*
_____
Charles Schneider (0005821)
Thomas E. Madden (0077069)
        * *Trial Counsel*
Byron Turner (0096388)
Tracy Bradford  (0058556)
Assistant Attorneys General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-728-7055
thomas.madden@OhioAttorneyGeneral.gov
byron.turner@OhioAttorneyGeneral.gov
tracy.bradford@OhioAttorneyGeneral.gov

*Counsel for Defendant Director Chambers-Smith*


## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2020, the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Thomas E. Madden*
_____
T.E. Madden (0077069)
Assistant Attorney General

- 16 -